E-FILED
Monday, 29 December, 2025  12:59:07 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PETER M. BONUTTI M.D., et al, | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| v. | ) | No. 25-cv-2320 |
| | ) | |
| DOEHRING WINDERS & CO., LLP, | ) | Hon. Colin Bruce |
| Et al, | ) | Mag. Judge Eric I. Long |
| | ) | |
|    Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' 12(B)(6) MOTION TO DISMISS**

      Dr. Peter Bonutti, along with certain trusts and entities with which he is associated (collectively "Plaintiffs"), engaged Doehring, Winders & Co., LLP ("DW") to perform professional accounting services for many years.[1]  Plaintiffs have now brought this action for professional negligence and other claims.

      Claims against accountants are subject to a two-year statute of limitations, and Plaintiffs allege that they executed a tolling agreement in January 2023.  Nevertheless, the claims are still time-barred to the extent they accrued in January 2021 or earlier.  (There is also a five-year statute of repose, which is why Plaintiffs generally do not even seek to recover for conduct prior to 2018.)  The complaint makes clear that these claims accrued prior to that date.  If Plaintiffs' allegations are true, they were aware that (1) DW failed to make an accounting change that cost a business $2 million in tax deductions; (2) Plaintiffs did not receive an expected payment of more than $2 million in connection with a settled lawsuit; (3) Plaintiffs did not receive an expected tax refund; (4) Plaintiffs paid Illinois income tax despite the lack of Illinois income; and (5) DW prepared (and Plaintiffs filed) tax returns that did not lead to a payment or a refund---in other

---

[1] DW is sued along with two individual DW accountants, Jeffery Spracklen and Steven Wente. We shall refer to DW and the individuals collectively as "DW."

words, tax returns with no obvious utility.  A reasonable person in Plaintiffs' position would have been investigating potential claims against DW prior to 2021.

Further, two of Plaintiffs' most substantial alleged injuries have fatal defects aside from the statute of limitations.  Plaintiffs claim approximately $2 million based on DW's alleged failure to change the accounting method of an entity called Joint Active Systems ("JAS").  This failure to change the accounting method allegedly cost JAS the opportunity to take certain tax deductions.  But **JAS is not a plaintiff in this case**.  Dr. Bonutti no longer has any interest in it. Claims based on this injury should be dismissed.

Also, Plaintiffs seek to recover approximately $2 million in settlement funds that were erroneously paid to JAS instead of a Plaintiff entity called BRI.  This allegation is simply a mismatch between DW's conduct and the alleged injury.  Plaintiffs say DW mishandled the accounting related to this erroneous payment, but Plaintiffs do not claim any tax-related damages.  Plaintiffs do not allege that DW caused the settlement funds to be directed to the wrong entity.  Nevertheless, Plaintiffs want DW to pay them the full sum of money that was paid to (and, according to the complaint, is held by) JAS.  The claim for this injury should be a conversion or perhaps unjust enrichment claim against JAS, not a tax malpractice claim against an outside accountant.

To the extent this case survives the time bar and these other failures, it should be limited to claims for malpractice.  The claims for breach of fiduciary duty and under the consumer fraud act should be dismissed.

A claim for breach of fiduciary duty and a claim for professional negligence are duplicative when both are based on negligence.  In order to distinguish these two claims, Plaintiffs emphasize that their fiduciary duty claims are only based on the duty of loyalty, not the

duty of care.  But Plaintiffs have not alleged facts that give rise to a plausible violation of the duty of loyalty.  There is no plausible allegation of self-dealing, an interested transaction, or other intentional misconduct.  At most, the facts that form the basis of this claim give rise to a plausible inference of negligence or malpractice—not disloyalty.  The count should be dismissed.

Similarly, the Illinois Consumer Fraud Act does not cover claims based on the performance of professional services.  Plaintiffs insist that they are not alleging such claims.  But the facts alleged say otherwise.  Because the facts alleged do not state a claim under the Consumer Fraud Act, that count should be dismissed.

## L.R. 7.1(A)(2) STATEMENT REGARDING ORAL ARGUMENT

DW believes that this brief clearly demonstrates that Plaintiffs' complaint should be dismissed with prejudice.  But DW requests the opportunity to present oral argument on this motion and answer this Court's questions if this Court believes it would be helpful.

## BACKGROUND

Doehring & Winders LLP ("DW") performed accounting services for Peter Bonutti and his various businesses and trusts from 1989 until 2021.  Compl. ¶ 14.  The services included tax return preparation and other services (Compl. ¶ 20), but most of the allegations in this case involve DW's tax work.

The complaint alleges numerous errors in DW's work that occurred as far back as 2003. They include the filing of unnecessary tax returns, the failure to make certain tax elections, and the misallocation of income and losses, all of which allegedly resulted in tax overpayments.  We will discuss the details of many of these allegations in the argument.

## ARGUMENT

**I.    Plaintiffs' claims are barred by the statute of limitations and the statute of repose.**

The complaint alleges conduct that goes back over more than decade.  But under Illinois law, claims against accountants are subject to a two year statute of limitations and a five year statute of repose.  Those limitations period bars these claims.

"A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate."  *Indep. Trust Corp. v. Stewart Info Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).   Under Illinois law, any action against an accountant "for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission."  735 ILCS 5/13-214.2(a).  In this case, Plaintiffs allege that a tolling agreement became effective in January 2023.  Compl. ¶ 99.  Therefore, claims are barred to the extent they accrued by January 2021.

The statute of limitations incorporates the discovery rule, which "delays commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury and that it may have been wrongfully caused."  *Kadlec v. Sumner*, 2013 IL App (1st) 122802, ¶ 24.  Importantly, "[t]he discovery rule has never been interpreted to delay commencement of the statute of limitations until a person acquires actual knowledge of negligent conduct."  *Dancor v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673 (1st Dist. 1997). "Rather, it has been interpreted to delay commencement until the person has a reasonable belief that the injury was caused by wrongful conduct thereby creating an obligation to inquire further

4

on that issue." *Id.* Accordingly, a party "may not slumber on his rights" once it "reasonably appears that an injury was wrongfully caused." *Id.*

Illinois law also provides for a statute of repose that prohibits a plaintiff from bringing an action against an accountant "more than 5 years after the date" of the relevant conduct. 735 ILCS 5/13-214.2(b). In this case, claims are barred by the statute of repose if they are based on conduct prior to January 27, 2018. Compl. ¶ 99. Plaintiffs typically attempt to avoid the statute of repose by declining to seek recovery for pre-2018 damages. We emphasize that this choice is not optional: the statute of repose prevents any such claims. The fact that Plaintiffs focus on the period of 2018 and after does not allow their claims to go forward. The repose period bars all claims for conduct that began to occur prior to this 5 year period. Plaintiffs cannot avoid this result by simply ignoring the periods before the 5 years. The entire claims are barred.

### A. Plaintiffs were on notice of their alleged injuries prior to January 2021.

Plaintiffs are quite specific about the various injuries they claim to have suffered, and there are many of them. But a reasonable person in their position would have been investigating all of DW's accounting work no later than January 2021. These claims are time-barred.

***Lost TCJA refunds for JAS*** ($2,050,000, Compl. ¶¶ 45-51, 107): DW allegedly failed to change the accounting method for the entity JAS when the opportunity was presented by the 2017 Tax Cuts and Jobs Act. As a result of the failure to change the accounting method, JAS allegedly lost the opportunity to take certain tax deductions. Compl. ¶ 50-51.

The missed opportunity to take deductions is a tax overpayment, and JAS's injury occurred "immediately upon the overpayment of taxes." *SK Partners I LP v. Metro Consultants Inc.*, 408 Ill. App. 3d 127, 132 (1st Dist. 2011). In "establishing the starting date of the statute of limitations" in such a case, courts must determine "when the tax overpayment was sufficiently

5

discovered such that plaintiffs had a "reasonable belief that the injury was caused by wrongful conduct thereby creating an obligation to inquire further on that issue."  *Id.*

Here, Plaintiffs admit that "DW belatedly implement[ed] the accounting method change for tax year 2019" after "insistence by Dr. Bonutti."  Compl. ¶ 50; *see also* Compl. ¶ 47 (issue identified by Magda Szabo "when Dr. Bonutti was having a conversation with her").  In other words, ***Plaintiffs were aware of DW's alleged error before January 2021***.  Any claim for these injuries is barred by the statute of limitations.

*Lantz settlement* ($2,296,250, Compl. ¶¶ 52-58, 107):        In 2017, an entity called Lantz settled a patent infringement case and paid the settlement funds to JAS, as specified in the settlement agreement.  Compl. ¶ 52-53.  Plaintiffs allege that the funds should have been paid to a different entity, BRI.  Compl. ¶ 53-54.  That did not happen, and in 2020, Dr. Bonutti ceased to be an owner of JAS and completely lost these funds.  Compl. ¶ 57.

The statute of limitations and statute of repose bar this claim.  The underlying litigation was settled and the funds—more than $2 million—were paid to the (alleged) wrong entity ***in 2017***.  Any error by DW occurred prior to 2018 and this claim is thus barred by the statute of repose.  But it is also barred by the statute of limitations.  There can be no dispute that a reasonable entity in BRI's position would have known that ***it had not received $2 million in expected income as a result of a known settlement for a known lawsuit***.  A reasonable entity would have investigated this startling omission.  The statute of limitations and the statute of repose were both running.

Plaintiffs say that DW fabricated a commission entry on the books of BRI in 2017-2018, and did not disclose that the entry had been fabricated.  Compl. ¶ 93.  But Plaintiffs' claim here is ***not*** about the accounting entry and is ***not*** about any company's tax filing.  Rather, Plaintiffs

want to recover the settlement funds themselves, which were paid to JAS rather than BRI. Those funds were paid to the wrong entity in 2017. Further, it is simply not plausible that BRI and Dr. Bonutti were unaware in 2017—or at least on reasonable inquiry notice—that BRI had not received the expected payment (which exceeded $2 million) into BRI's bank account.

***Identity verification delays and missing tax refund*** ($68,304, Compl. ¶¶ 59-64, 108): In 2018, Dr. Bonutti received an IRS Identity Verification Notice and forwarded the Notice to DW. Compl. ¶ 59. Dr. Bonutti subsequently inquired about the impact of the Notice. Compl. ¶ 60. DW did not properly act on the notice (Plaintiffs suggest it may have "fallen through the cracks," Compl. ¶ 94, 97), and as a result, Dr. Bonutti did not receive his 2018 tax refund until the issue was resolved years later.

A reasonable taxpayer who reviews his own returns (as the law requires) would have been expecting the tax refund to issue sometime in 2019. When that did not happen, the reasonable taxpayer would have noticed a problem and began to investigate. *See Kadlec*, 2013 IL App (1st) 122802, ¶ 30 ("Once plaintiff was not presented with an estate tax return to sign on behalf of the estate by August 16, 2006, he clearly acquired the knowledge that something was amiss and had an obligation to inquire further, starting the clock on the applicable statute of limitations."). In addition, a reasonable person in Plaintiffs' position would have begun to investigate ***all*** of DW's work as a result of the other alleged known errors we have discussed so far.

Plaintiffs say that "[d]efendants mischaracterized the routine IRS identity verification notice as an 'identity theft' issue to excuse and conceal their failure to respond." Compl. ¶ 94. But the complaint does not even try to allege that DW concealed the injury itself—the freezing

of the tax refund. Plaintiffs admit that the problem was easily fixed when uncovered in 2021. Compl. ¶ 63, 94. Plaintiffs simply waited too long to investigate.

***Unnecessary Illinois replacement taxes for Bonutti Holdings*** ($151,586, Compl. ¶¶ 41-43, 107): Plaintiffs say DW filed tax returns for a disregarded entity (Plaintiff Bonutti Holdings LLC) for eighteen years, and as a result, that entity incurred and paid certain Illinois taxes that it would not otherwise have paid. In a nod to the statute of repose, Plaintiffs only seek to recover taxes allegedly overpaid from 2018-2021. Compl. ¶ 43. This does not save any of this claim. The acts at issue occurred for eighteen years, and are thus barred by the statute of repose.

Illinois law does not toll such claims based on the continuous representation doctrine. "Notably, a statute of repose gives effect to a policy different from that advanced by a period of limitations: a statute of repose is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." *Maniscalco v. Porte Brown LLC*, 2018 IL App (1st) 180716, ¶ 18. It does not matter that DW continued to perform services for Plaintiffs after making these alleged errors; "the continuous course of treatment doctrine is inapplicable to accounting malpractice actions, even where, as here, the relationship continues beyond the purportedly tortuous act or omission." Id. ¶ 23.

Any claim to recover these overpayments is barred by the statute of limitations and the statute of repose. Again, in cases of tax overpayment, "[d]amages occur immediately upon the overpayment of taxes." *SK Partners*, 408 Ill. App. 3d at 132. Here, Plaintiffs allege that they were on notice of several errors prior to January 2021, which we have already discussed, and were thus on notice to investigate whether this overpayment was wrongfully caused: (1) the failure to change the JAS accounting method; (2) the incorrect payment of the Lantz settlement; and (3) the delay of the 2018 tax refund. In addition, Plaintiffs were on notice that they had filed

Illinois tax returns and paid Illinois taxes. They allege that they should not have filed ***any*** such returns and should not have paid ***any*** such taxes, because Dr. Bonutti lived in Florida. Compl. ¶ 69-70. If these allegations are true, a reasonable person in Dr. Bonutti's position would have reviewed his tax returns (as the law requires) and would have suspected something was amiss and investigated whether Illinois tax had been properly paid. However, it is undisputed that this is alleged to have been going on for years prior to 2021, or 2018 for that matter. Thus, the statute of repose bars the claims.

      ***Unnecessary professional fees for trust returns*** ($140,000, Compl. ¶¶ 39-40, 44, 107): Plaintiffs say that DW filed tax returns for six grantor trusts per year that, under the Treasury Regulations, trustees "may, but are not required to" file. Compl. ¶ 39-40. Plaintiffs say that these filings were malpractice (although they did not lead to any tax overpayment) and seek to recover the fees paid of about $5,000 per return. They appear to claim only damages since 2018—a nod to the statute of repose. Compl. ¶ 44. Again, this does not save the claims. The Complaint make it clear that this had been going on since 2003. Compl. ¶ 39. The claims are barred by both the statute of limitations and the statute of repose.

      Any claim to recover these fees in time-barred. A reasonable plaintiff would have reviewed these trust tax returns and understood that they did not result in the payment of tax or the return of any refund. This fact, especially when combined with the other alleged errors we have discussed, would have led a reasonable person to investigate whether he had an actionable claim.

      ***Illinois residency over-allocation*** ($309,375, Compl. ¶¶ 69-70, 108): Dr. Bonutti is a former Illinois resident who has moved to Florida. He alleges that DW over-allocated income to Illinois from 2014 "through 2019," resulting in an overpayment of Illinois tax. Compl. ¶ 69.

The statute of limitations and statute of repose began to run when Dr. Bonutti made these overpayments – and a reasonable person in his position would have reviewed his tax filings (as the law requires) and observed the existence of Illinois income. *SK Partners*, 408 Ill. App. 3d at 132 (injury occurs "immediately upon the overpayment of taxes"). Dr. Bonutti knew he lived in Florida and (he alleges) knew that he had no Illinois income. A reasonable person would have investigated—particularly in view of the other issues we have discussed. However, no investigation is needed under the statute of repose, and these claims are barred in full since the period of alleged wrongdoing goes back to 2014.

*Other Injuries.* Plaintiffs allege a handful of other small injuries, including the following:

- *PTech loss misallocation* ($146,557, Compl. ¶¶ 74-77, 80, 108)

- *PTech improper distributions* ($504,960, Compl. ¶¶ 79, 81, 115)

- *IRS Audit* ($125,000, Compl. ¶ 71-73, 108)

- *Alleged Unauthorized Filing* ($10,000, Compl. ¶ 65-68, 108)

- *Foreign Reporting Correction* ($20,000, Compl. ¶ 88, 108)

- *ERC Delay:* ($18,750, Compl. ¶ 89, 108)

The Illinois Appellate Court "has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered." *Golla v. General Motors Corp.*, 167 Ill.2d 353, 364 (1995). Rather, "the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries." *Id.*

As we have already explained, Plaintiffs were injured prior to January 2021, and if Plaintiffs' allegations are true, a reasonable person in their position would have questioned and

investigated *all* of DW's accounting work. There would have been a number of reasons to do so: the failure to make an accounting change (allegedly a $2 million error), the failure to receive an expected payment of more than $2 million, the failure to receive an expected tax refund, the payment of Illinois income tax despite the alleged lack of Illinois income, and trust tax returns of questionable utility. Accordingly, claims based on all of DW's work are time-barred.

### B. Nothing in the complaint delays the running of the statute of limitations.

Plaintiffs know that they have a statute of limitations problem, so they have made a series of allegations suggesting that they were unable to discover their injuries prior to January 2021. However, the facts alleged simply do not render that inference a plausible one. A "complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief. . . .  If the allegations give rise to an obvious alternative explanation, . . .  then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks, brackets and citations omitted).

First, Plaintiffs suggest that the statute of limitations may have been tolled because DW performed work that DW "knew or should have known they could not competently perform." Compl. ¶ 95. This makes no sense—the same allegation could be made in *any* case of professional negligence and would eviscerate the statute of limitations. A plaintiff could always argue that the negligent defendant should have known he would make a mistake. This does not plausibly prevent the discovery of any claim.

Second, Plaintiffs say that DW failed to disclose that it had not timely filed Dr. Bonutti's 2019 return and then filed it late without authorization. Compl. ¶ 92. This allegation—limited to one particular tax return, when myriad returns are allegedly at issue—did not prevent the

11

discovery of Plaintiffs' injuries or claims.  And in any event, Dr. Bonutti obviously knew *he had never authorized that the return be filed*.  He therefore knew it had not been timely filed.  *See Kadlec*, 2013 IL App (1st) 122802, ¶ 30 ("Once plaintiff was not presented with an estate tax return to sign on behalf of the estate by August 16, 2006, he clearly acquired the knowledge that something was amiss and had an obligation to inquire further, starting the clock on the applicable statute of limitations.").

Third, Plaintiffs allege that DW "maintained exclusive control over accounting records and tax workpapers."  Compl. ¶ 96(a).  But Plaintiffs did not need to see these documents to learn about their injuries.  Rather, Plaintiffs were on notice of these injuries because they could see their final tax returns (which they had to review and sign) and their bank accounts.

In short, the complaint makes clear that a reasonable person in Plaintiffs' position would have begun to investigate these claims prior to January 2021.  All of Plaintiffs' claims should be dismissed based on the statute of limitations.

## II.    To the extent the claims survive the statute of limitations, claims based on the TCJA Refunds and Lantz settlement should be dismissed for other reasons.

If this Court determines that the statute of limitations does not bar all of Plaintiffs' claims, there are independent reasons to dismiss the claims based on Plaintiffs' two largest alleged injuries.

### A.  Any claim for losses related to the JAS's alleged Lost TCJA Refunds should be dismissed because JAS is not a plaintiff.

There are 12 plaintiffs in this case (Compl. ¶ 1-12), but Joint Active Systems (JAS) is not among them.  This matters because *nearly half the claimed damages* ($2,050,000) relate to DW's alleged failure to change the accounting method for JAS following the enactment of the 2017 Tax Cuts and Jobs Act, which allegedly caused JAS to lose certain tax benefits.  Compl. ¶¶

12

45-51, 107.  If that claim is not barred by the statute of limitations, it is barred because those damages were suffered by JAS, which is not a plaintiff in this case.  Dr. Bonutti alleges that he is no longer a shareholder in JAS (Compl. ¶ 57), but even if he were, he would not have standing to pursue a claim on behalf of JAS.  JAS is a corporation (Compl. ¶ 52) and a "stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets."  *Small v. Sussman*, 306 Ill. App. 3d 639, 643 (1st Dist. 1999).

Accordingly, the claims for JAS's lost refunds must be dismissed.

### B.  Any claim related to the Lantz settlement should be brought by BRI against JAS—DW should not be a part of it.

Another large piece of the claimed damages (again, nearly half—$2,296,250) relates to the Lantz settlement.  Compl. ¶¶ 52-58, 107.  Plaintiffs allege that Lantz paid the settlement funds to JAS (rather than Plaintiff BRI) pursuant to the settlement agreement.  Although Plaintiffs say someone made an "administrative error" in drafting the agreement, they do not blame DW for this.  Rather, they blame DW for how the settlement was accounted for on BRI's books.  Compl. ¶ 55.  But Plaintiffs ***do not allege that BRI made any tax overpayments—they simply want the settlement funds themselves***, which allegedly remain with JAS.

Nothing in the complaint suggests DW—an outside accountant—is responsible for JAS's continued refusal to pay the funds.  Nothing in the complaint suggests that JAS lacked the ability to hand over the funds back in 2017---in fact, ***at the time of the alleged error, Dr. Bonutti was 75% owner of JAS***.  Nothing in the complaint suggests that DW can now hand over these funds

without authorization from JAS.  These funds should be the subject of a conversion or unjust enrichment claim between BRI and JAS—not a claim against the outside accountant.

### III.    Plaintiffs have not plausibly alleged, and cannot plausibly allege, a breach of the duty of loyalty.

To the extent Plaintiffs' claims survive the statute of limitations, they should be limited to a single count for negligence.  Count II, which alleges a breach of fiduciary duty, should be dismissed.

Plaintiffs are well aware that claims for negligence and breach of fiduciary duty are duplicative when "plaintiffs incorporate[] the same allegations of injury into both claims and those injuries were actually caused by defendants' allegedly negligent acts."  *Pippen v. Pedersen*, 2013 IL App (1st) 111371, ¶ 27; *see also id.* ¶ 28 (claims duplicative when "the operative facts and injury are the same").  Accordingly, in order to distinguish Count II from Count I, Plaintiffs base Count II only on the duty of loyalty—not the duty of care.  This presents a problem for them: the facts alleged do not plausibly suggest a violation of the duty of loyalty.

In order to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *McCauley*, 671 F.3d at 615.  "A complaint is too speculative where there is an 'obvious alternative explanation' for the complaint's factual allegations."  *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 497 (7th Cir. 2025).  In conducting this analysis, the court should disregard "any portions that are no more than conclusions."  *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

The duty of loyalty prohibits a fiduciary from seeking to profit at the expense of the principal, *Enter. Recovery Sys. v. Salmeron*, 401 Ill. App. 3d 65, 75 (1st Dist. 2010), or from using "his or her office, or control, to promote, advance or effectuate a transaction between the

14

[principal] and the person (or entity in which he has a substantial interest) and that the transaction is not substantively fair to the [principal]," *Seidel v. Byron*, No. 05 C 6698, 2008 U.S. Dist. LEXIS 76306, at *9-10 (N.D. Ill. Sep. 26, 2008).  A fiduciary "may violate the duty of loyalty by acting out of self-interest, failing to exercise independence, or failing to act in good faith. . . .  Examples of bad faith include when a director intentionally acts with a purpose other than that of advancing the best interests of the corporation or intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."  *Caruso v. Modany*, 613 B.R. 254, 262 (Bankr. S.D. Ind. 2020) (Delaware law) (quotation marks omitted).

Plaintiffs allege that DW engaged in three actionable courses of conduct, but none of these gives rise of a plausible breach of loyalty claim.  We repeat a critical point: if the allegations merely suggest professional malpractice, they do ***not*** state a claim for breach of the duty of loyalty.  *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-244 (Del. 2009) ("But, if the directors failed to do all that they should have under the circumstances, they breached their duty of care.  Only if they knowingly and completely failed to undertake their responsibilities would they breach their duty of loyalty.")

### A.  Lack of Informed Consent

First, DW allegedly did not obtain Dr. Bonutti's informed consent to "represent" his brother Boris, "whose financial interests were directly adverse."  Compl. ¶ 112.  The complaint does not explain what "represent" means—after all, DW is an accounting firm, not a law firm. In paragraph 82, Plaintiffs allege that this representation included "negotiating a separation

15

agreement" that is not mentioned anywhere else in the entire complaint and not related to any of the claimed damages.  Compl. ¶ 82.

The complaint also fails to allege any factual matter that explains how Peter and Boris "were directly adverse." The complaint indicates that Peter and Boris each had interests in JAS and PTech.  Compl. ¶ 57, 74.  But there is nothing adverse about sharing ownership in the same business.  And it is common for accountants to prepare the taxes of multiple owners of the same business.

Given the paucity of factual allegations, it is not plausible that DW intentionally acted to favor itself at the expense of its client.  Even if DW failed to obtain consent that would be required by professional standards, that is an allegation of negligence.  It is not a breach of the duty of loyalty.

### B.  Favoring Boris over Dr. Bonutti

Plaintiffs claim that DW "systematically favored" Boris over Dr. Bonutti with respect to the PTech distributions, PTech loss allocations, and treatment of the Lantz settlement.  Compl. ¶ 113.  But the bald conclusion of "systematic[] favor[itism]" must be disregarded.  *W. Bend Mut.*, 844 F.3d at 675 (court should disregard "any portions" of the complaint "that are no more than conclusions").  When that conclusion is stripped away, the facts alleged do not plausibly suggest that DW acted out of self-interest at the expense of the client.  At most, the allegations may plausibly suggest that DW acted negligently.

With respect to the Lantz settlement, Plaintiffs allege that more than $2 million was paid to JAS rather than BRI, in accordance with an erroneously-drafted settlement agreement.  Compl. ¶ 52-53.  At that time, Dr. Bonutti owned 75% of BRI.  Compl. ¶ 57.  Plaintiffs do not fault DW for that erroneous transfer, but rather for the subsequent accounting on BRI's books.

16

Compl. ¶ 55.  With respect to PTech, Plaintiffs allege that DW incorrectly allocated losses and made distributions.  Compl. ¶ 74-81.  But nothing in either episode suggests that DW acted out of its own self-interest or intentionally acted to hurt Dr. Bonutti.  At most, the complaint suggests that DW did not properly perform the work.  That is not a breach of the duty of loyalty.

### C.  Doing the Work

DW allegedly continued to work for Dr. Bonutti (and accept fees) even though DW "knew or should have known" they were not capable of doing the work.  Compl. ¶ 114.  This is not intentional conduct, much less a breach of the duty of loyalty—if DW "should have known" they were not capable of doing the work, that is simply an allegation of negligence.  It is not an act of disloyalty if one does not foresee one's own mistakes.

*

In short, if any of these three allegations could form the basis for a duty of loyalty claim, *any* allegation of negligence could be reframed as a duty of loyalty claim.  There is simply not a shred of factual content that suggests DW placed its own interests over those of its client.

### IV.    Plaintiffs have not plausibly alleged, and cannot plausibly allege, a claim under the Illinois Consumer Fraud Act.

In order to state a claim under the Consumer Fraud Act, a plaintiff must plead, among other things, "the occurrence of the deception in the course of conduct involving trade or commerce."  *Tkacz v. Weiner*, 368 Ill. App. 3d 610, 612 (1st Dist. 2006).  Courts "have held that the provision of professional legal, medical, and dentistry services does not constitute trade or commerce under the Consumer Fraud Act."  *Ripes v. Schlechter*, 2017 IL App (1st) 161026, ¶ 20; *see also Miller v. Klingsporn*, 2025 IL App (3d) 240026, ¶ 32 (veterinary services).  The provision of such professional services is "distinctly different from ordinary commercial practices to be covered under the Act" and "not an ordinary commercial enterprise."  *Tkacz*, 368

17

Ill. App. at 613.  Notably, although "the practice of medicine may have a business aspect, courts have uniformly held that the Consumer Fraud Act may not be used as a means to redress a personal claim for medical malpractice, the commercial aspects of which do not affect the general public."  *Ripes*, 2017 IL App (1st) 161026, ¶ 20; *accord Tkacz*, 368 Ill. App. 3d at 614-615 (claim for professional negligence does not state claim under consumer fraud act).

This analysis applies equally to accounting services, which are subject to extensive regulation by the Illinois Department of Professional and Financial Regulation.  *See generally* 68 Ill. Admin. Code 1420.5 *et seq*.  Also, the Illinois legislature has enacted a special statute of limitations and statute of repose to govern this profession, just as it has done to govern malpractice claims against doctors and lawyers.  735 ILCS 5/13-214.2 (accountants); 735 ILCS 5/13-214.3 (attorneys); 735 ILCS 5/13-212 (medical).

Plaintiffs' claims are simply claims for professional negligence, not claims based on business aspects of accountancy.  *See Mathis v. Yildiz*, 2023 IL App (1st) 221703, ¶ 28 ("The Consumer Fraud Act includes claims premised on the business aspects of dentistry, but not claims based on the practice of dentistry itself.").  To explain, we will address each alleged deceptive practice in turn.

*Alleged deceptive practices 1 and 3:* Plaintiffs allege that DW accepted engagements and continued to perform services even though DW knew or should have known that the firm was not capable of doing so.  This is a misrepresentation in paragraph 120 and an omission in paragraph 125.  Plaintiffs made this same allegation in connection with tolling the statute of limitations (Compl. ¶ 95) and in connection with the duty of loyalty (Compl. ¶ 114).  The allegation got nowhere in those cases and it fails here too.  This is simply an allegation that DW did not handle the services competently—in other words, an allegation of professional

negligence.  After all, a similar allegation could be made in every case of medical or legal malpractice: if a professional performs negligent work, the plaintiff could allege that the professional should have known he would make a mistake.  If such a claim were proper, it would swallow the well-grounded law preventing the assertion of professional malpractice in the guise of consumer fraud.

To be sure, Plaintiffs allege that "misrepresentation of capability is a deceptive business practice . . . not an exercise of professional judgment," and "whether DW possessed the capability to handle [the] work does not require evaluation of professional opinions or tax law interpretation."  Compl. ¶ 121.  That is simply wrong, and this Court need not credit such conclusory statements.  *W. Bend Mut.*, 844 F.3d at 675 (court should disregard "any portions" of the complaint "that are no more than conclusions").  One cannot determine whether DW "possessed the capability to handle" the work without deciding whether DW did, in fact, handle the work capably---a determination of negligence that requires expert testimony.

***Alleged deceptive practice 2:***  Plaintiffs allege that DW billed for preparation of "unnecessary" tax returns.  Compl. ¶ 122.  Plaintiffs allege that the "question of whether a return was legally required under Treasury Regulations is a factual matter that does not involve professional opinion."  Compl. ¶ 124.  But that is not the relevant question.  The question, rather, is whether such services were unreasonably rendered.  After all, Plaintiffs expressly admit that these returns were permitted, but not required.  Compl. ¶ 40-41.  To allege that unnecessary services were performed is to make a malpractice claim.  *See Mathis*, 2023 IL App (1st) 221703, ¶ 36 (the allegation of "the performance of an unnecessary and harmful dental procedure" was an allegation of dental malpractice, not consumer fraud).

In short, the claim under the Consumer Fraud Act is just a claim for professional negligence, despite Plaintiffs' protestations to the contrary. It should thus be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice. In the alternative, the complaint should be narrowed considerably. It should be limited to a single cause of action for negligence and limited to claims that are (i) within the statute of limitations and statute of repose and (ii) plausibly alleged.

Respectfully submitted,

_/s/ Thomas F. Falkenberg_
Attorney for Defendants

Thomas F. Falkenberg
Falkenberg Ives LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
(312) 566-4801
tff@falkenbergives.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(B)(4)(c), I certify that this memorandum complies with the type volume limitation of Local Rule 7.1(b)(4)(b) in that it contains no more than 7,000 words. The total number of words in this memorandum is 6,157.

_/s/ Thomas F. Falkenberg_
Attorney for Defendants