E-FILED
Tuesday, 13 January, 2026  01:28:32 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PETER M. BONUTTI M.D., et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 25-cv-2320 |
| | ) | |
| DOEHRING WINDERS & CO., LLP, | ) | Hon. Colin Bruce |
| Et al, | ) | Mag. Judge Eric I. Long |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' 12(B)(6) MOTION TO DISMISS**

As we explained in our opening brief, Plaintiffs' claims are barred by the statute of limitations and statute of repose, and Plaintiffs have not plausibly alleged claims for breach of loyalty and consumer fraud.  Their opposition brief does not show otherwise.

## ARGUMENT

### I.    Plaintiffs' claims are barred by the statute of limitations and statute of repose.

Plaintiffs do not dispute that the statute of limitations bars their claims if they accrued prior to January 2021, and the statute of repose generally would serve to bar their claims to the extent they are based on conduct prior to January 2018.  But Plaintiffs argue throughout their opposition that "discovery could not occur until replacement accountants conducted forensic review in 2021-2022."  Opp. at 1.  They contend that DW maintained exclusive control over tax workpapers and that the issues involved complex tax questions that required forensic analysis.  Plaintiffs claim that the required analysis was "impossible while Defendants controlled records and claimed their work was proper."  Opp. at 7.  Plaintiffs misunderstand the discovery rule.

The statute of limitations begins to run when a reasonable person would begin to investigate—*not* when the Plaintiff actually concluded his investigation.  As one court has said, the statute of limitations begins to run when a plaintiff "possesses sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved."  *Hoffman v. Orthopedic Sys., Inc.*, 327 Ill. App. 3d 1004,1010 (1st Dist. 2002).   "At that point, the burden is upon plaintiff to inquire further as to the existence of a cause of action."  *Id.*  "It would be manifestly unjust to visit a stale claim upon a putative defendant by reason of inadequate investigative procedures."  *Id.* at 1011.

In this case, as explained in our opening brief, Plaintiffs knew that: (1) a beneficial accounting change had not been made; (2) settlement funds had not been paid to the expected

1

entity; (3) an expected tax refund did not arrive; (4) Plaintiffs filed Illinois tax returns, reported Illinois income and paid Illinois taxes, even though they did not live in Illinois and allegedly had no Illinois income; and (5) Plaintiffs filed tax returns that did not result in the payment of tax or any refund. *See* Mem. at 5-10. Plaintiffs could and should have investigated. It might have been necessary to terminate the engagement, request return of Plaintiffs' records and consult an outside expert, which Plaintiffs eventually did. But the statute of limitations was running, and Plaintiffs' failure to investigate promptly does not extend the limitations period.

Plaintiffs offer four "[a]ffirmative acts of concealment" that allegedly prevented discovery and tolled the statute of repose. Opp. at 4-5. These allegations were in the Complaint, and we have addressed them. Mem. at 6-8, 11-12. Here is the key point: these alleged acts did not conceal anything. Plaintiffs (if their allegations are true) knew enough facts about their alleged injuries to be on notice of their claims. For example, Plaintiffs say that a "taxpayer who doesn't receive an expected refund does not automatically know that their accountant wrongfully failed to respond to an IRS notice." Opp. at 8. But the taxpayer has reason to investigate why he did not receive the expected refund, and a reasonable investigation would reveal the problem.

Further, none of Plaintiffs' cases allow them to avoid the statute of limitations. In *Comprehensive Marketing Inc. v. Huck Bouma P.C.*, 2023 IL App (1st) 220694-U, the defendant reviewed its prior work on an annual basis thereafter and also handled a complaint based on its prior work. *Id.* ¶ 41-42. Here, Plaintiffs do not allege any instance in which DW addressed a prior error and denied that error. In *Fuller Family Holdings LLC v. Northern Trust Co.*, 863 N.E.2d 743, 757 (1st Dist. 2007), the claim was not time-barred where the document at issue had been lost or destroyed and had never been provided to plaintiffs. Here, Plaintiffs reviewed their tax returns and could have sought return of other necessary documents--as they eventually did in

their 2021 investigation.  Finally, Plaintiffs simply mischaracterize *SK Partners I LP v. Metro Consultants Inc.*, 408 Ill. App. 3d 127, 132 (1st Dist. 2011), which did not hold that a tax overpayment must be "plainly obvious" to start the statute of limitations.  *Contra* Opp. at 10.  The court made clear that "the established standard is measured by a reasonable belief and the obligation to inquire."  408 Ill App. 3d 132.  That requires more than "mere suspicion or speculation," *id.*, but this case easily clears that hurdle.

### II.    Even if the statute of limitations does not apply, Plaintiffs have failed to state any claim to recover for two of their alleged injuries.

Plaintiffs may not recover lost tax refunds that should have been received by JAS, which is not a Plaintiff.  Plaintiffs admit that "shareholders have standing when they allege direct and distinct injury separate from corporate injury," Opp. at 11, but they have alleged no such injury here.  They merely claim the amount of tax refunds that were lost by the corporate entity because that entity did not change its accounting method.  The normal rules of corporate injury and shareholder standing do not change where the corporation at issue is an S corporation.  The only case Plaintiffs cite, *Zweig v. Miller*, 2020 IL App (1st) 191409, did not address the issue---that case was decided based on the statute of limitations.  *Id.* ¶ 20-22, 38.

Plaintiffs also claim that settlement funds were improperly paid to JAS rather than one of the Plaintiffs, BRI.  Compl. ¶¶ 52-58, 107.  It does not matter whether DW's response to the payment error fell below professional standards—DW's accounting choices did not cause BRI to be deprived of the settlement funds, which had been sent to the custody of JAS.

### III.    Plaintiffs have not plausibly alleged, and cannot plausibly allege, a breach of the duty of loyalty.

Plaintiffs say that they have stated a breach of loyalty claim because DW allegedly made three decisions that benefitted Boris more than Dr. Bonutti.  Opp. at 18 (explaining this charge in

3

the context of informed consent), 19 (repeating in the context of favoritism).  But the factual allegations do not raise a plausible inference of intentional misconduct.  When an outside accountant performs work for a company, there are a wide variety of accounting errors that could benefit some shareholders over others.  In fact, by definition, ***any error that forms the basis of a negligence claim harms the client in some way***.  Such errors do not, without more, state plausible claims for breach of loyalty or other intentional misconduct.

In fact, courts routinely apply stringent pleading standards to claims for intentional misconduct brought against outside accountants—and routinely dismiss such claims.  *See, e.g., Lewis v. Straka*, No. 05C1008, 2007 U.S. Dist. LEXIS 59054, at *5 (E.D. Wis. Aug. 13, 2007) (dismissing claims because "the most that can be said is that the amended complaint creates an inference of negligence on the part of KPMG"); *Riggs Ptnrs LLC v. Hub Group, Inc.*, No. 02 C 1188, 2002 U.S. Dist. LEXIS 20649, at *28 (N.D. Ill. Oct. 23, 2002) ("Allegations of GAAP and GAAS violations, standing alone, are generally insufficient to" state a claim for fraud against an outside auditor).  This case is nothing like *Miller v. Harris*, 2013 IL App (2d) 120512, in which the plaintiff alleged that his co-owner orchestrated a scheme to oust him from his company, and his accountant participated in the scheme.  *Id.* ¶ 9-12.  Specifically, the accountant "followed [co-owners'] instructions to adjust Claimsco's books and records so as to maximize the [plaintiffs'] financial liabilities," and prepared tax returns based on this false reporting.  *Id.* ¶ 12.

Plaintiffs next assert that DW knew it could not competently perform Plaintiffs' work, but did it anyway.  Opp. at 20.  They ignore their own complaint, which alleges that DW should have foreseen its own mistakes.  *See* Compl. ¶ 95, 114.  But more fundamentally, Plaintiffs have simply not alleged facts giving rise to a plausible inference that DW ***intentionally*** sought to advantage itself by concealing known deficiencies.  That is akin to a fraud claim, and courts

routinely reject attempts to state such claims against outside auditors where the facts indicate only negligence. *See Lewis*, 2007 U.S. Dist. LEXIS 59054, at \*5; *Riggs*, 2002 U.S. Dist. LEXIS 20649, at \*28. Even if (as Plaintiffs allege) DW recognized it "lacked the capability" to do the work in 2021 (Compl. ¶ 95), it does not follow that DW ***always*** believed it lacked that capability.

Plaintiffs rely on *Jerry Clark Equipment Inc. v. Hibbits*, 612 N.E.2d 858 (5th Dist. 1993), but that case is inapposite. *Jerry Clark* involved one claim: negligence. *Id.* at 232. Nothing in *Jerry Clark* supports a claim for the breach of the duty of loyalty, which requires that the defendant intentionally seek to benefit himself at the expense of the client. In particular, nothing in *Jerry Clark* suggests that a negligence claim can be turned into a loyalty claim with a conclusory allegation that the defendant knew he was in over his head.

## IV. Plaintiffs have not plausibly alleged, and cannot plausibly allege, a claim under the Consumer Fraud Act.

The parties agree that a plaintiff cannot state a consumer fraud claim based on ***the performance of professional services***, but may be able to state a claim based on conduct within the ***business aspects*** of professional services. Mem. at 18; Opp. at 22-24. However, Plaintiffs' claims fall on the wrong side of that line. We addressed Plaintiffs' allegations in our opening brief, and they have little new to say. They ignore our analogy to *Mathis v. Yildiz*, 2023 IL App (1st) 221703, where the allegation of "performance of an unnecessary and harmful dental procedure" was an allegation of dental malpractice, not consumer fraud. *Id.* ¶ 36. Instead, they say that in a different part of *Mathis*, "the court approved Consumer Fraud Act claims based on 'balance billing' practices that charged patients more than their insurance allowed." Opp. at 25; *Mathis*, 2023 IL App (1st) 221703, ¶ 34-35. But the practice of "balance billing" does not implicate the professional competence of the services. The claim applied in full force even if the work fully met professional standards. Not so in this case.

**CONCLUSION**

For the foregoing reasons and those set forth in our opening brief, Plaintiffs' complaint

should be dismissed with prejudice.  In the alternative, the complaint should be narrowed

considerably.  It should be limited to a single cause of action for negligence and limited to claims

that are (i) within the statute of limitations and statute of repose and (ii) plausibly alleged.

Respectfully submitted,

_/s/ Thomas F. Falkenberg_
Attorney for Defendants

Thomas F. Falkenberg
Falkenberg Ives LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
(312) 566-4801
tff@falkenbergives.com